**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN FOOD AND VENDING | : | No. 3:10cv2576 |
| CORPORATION, | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| FULL SERVICE VENDING COMPANY, | : | |
| d/b/a FULL SERVICE FOODS GROUP, | : | |
| Defendant | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court is defendant's motion to dismiss.  Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises from defendant's alleged interference with contracts possessed by the plaintiff to provide vending services to businesses.  Plaintiff American Food and Vending Corporation ("AFVC") alleges that on July 17, 2009 it entered into a five-year contract with Novapak Corporation to provide vending services for Novapak's facitility in Hazleton, Pennsylvania.  (Amended Complt. (Doc. 15) (hereinafter "Amend. Complt.") at ¶ 8).  On November 9, 2009, Novapak informed AFVC that the company would not honor that contract because the employee who signed it did not have authority to bind the company to such a contract.  (<u>Id.</u> at ¶ 9).  The person who signed the contract in July 2009 informed plaintiff in November 2009 that the contract would not be honored.  (<u>Id.</u> at ¶ 10).

On November 16, 2009, AFVC filed a demand for arbitration with the American Arbitration Association.  (Id. at ¶ 11).  Plaintiff filed this demand pursuant to the terms of the alleged contract, and sought $35,000 in damages, plus interest, costs, and fees.  (Id.).  Full Service Vending began providing vending services to Novapak.  The next day, counsel for AFVC sent a letter to David A. Mandella of Defendant Full Service Vending Group ("Full Service") advising him that plaintiff would bring an action against Full Service for intentional interference with a the contract if Full Service were complicit in any breach of contract by Novapak.  (Id. at ¶ 12).  On November 27, 2009, Novapak's counsel wrote plaintiff's counsel to inform him that Novapak would not honor the contract.  (Id. at ¶ 13).  This correspondence indicated that a copy had been sent to defendant's counsel as well, even though Full Service was not a party to the contract between plaintiff and Novapak.  (Id. at ¶¶ 14-15).  AFVC removed its machines form Novapak at the company's request on December 3, 2009.  (Id. at ¶ 16).  On August 19, 2010 an arbitrator issued in award of $40,329 in AFVC's favor on the breach-of-contract claim.  (Id. at ¶ 17).  Novapak has not paid any portion of the award to AFVC.  (Id. at ¶ 19).

Plaintiff alleges that Full Service "induced Novapak to terminate its contract with AFVC by promising to pay for and/or reimburse Novapak for its attorney's fees, costs, and any adverse judgment" from the arbitration.  (Id. at ¶ 20).  Plaintiff contends that Full Service paid Novapak's portion of the arbitration fees and costs.  (Id. at ¶ 21).  In addition, Full Service allegedly paid for and/or provided legal counsel

2

to Novapak in connection with the arbitration.  (Id. at ¶ 22).  Moreover, Novapak

negotiated or signed an agreement with Full Service for the provision of vending

services during the term of Novapak's contract with plaintiff.  (Id. at ¶ 23).  Full

Service has been providing vending services to Novapak since Novapak asked

plaintiff to remove its machines form the Novapak facility.  (Id. at ¶ 24).  Finally,

plaintiff alleges that Full Service was aware of the contractual relationship AFVS had

with Novapak and "intentionally, purposefully and with the sole intent to injure and/or

the specific intent to harm AFVC's contractual relationship," encouraged, persuaded

or induced Novapak to breach the contract.  (Id. at ¶ 25).

       Plaintiff also alleges that on May 17, 2010 AFVC signed a contract with

Altadis, USA ("Altadis") for the provision of vending services at Altadis facilities in

McAdoo, Pennsylvania.  (Id. at ¶ 28).  This contract superseded a previous contract

between the parties executed in November 2005.  (Id. at ¶ 29).  Altadis agreed to

this new contract in exchange for plaintiff's provision of a free company party for

Altadis employees.  (Id.).  Plaintiff paid for this party, held in July 2010.  (Id.).

       On October 19, 2010, Altadis informed AFVC that it would not honor its

contract with AFVC.  (Id. at ¶ 30).  On October 31, 2010, AFVC removed its

machines from Altadis property at Altadis's request.  (Id. at ¶ 31).  Plaintiff alleges

that Full Service induced Altadis to terminate its relationship with AFVC.  (Id. at ¶

32).  Full Service allegedly promised to reimburse Altadis for any attorney's fees,

costs, and adverse judgment that arose from the termination of the AFVC-Altadis

contract.  (Id.).  Altadis and Full Service had negotiated an agreement during the term of plaintiff's contract with Altadis.  (Id. at ¶ 33).  Full Service has provided vending services to Altadis since AFVC removed the machines from Altadis property.  (Id. at ¶ 34).  Plaintiff alleges that Defendant Full Service was aware of the contractual relationship between AFVC and Altadis and nevertheless persuaded and/or induced Altadis to breach the contract with the intent of injuring the plaintiff. (Id. at ¶ 35).  Full Service was not a party to the contract between plaintiff and Altadis.  (Id. at ¶ 36).

Plaintiff likewise alleges that AFVC entered into a three-year contract with the Berwick Hospital Center ("BHC ') on August 28, 2007.  (Id. at ¶ 39).  BHC had always expressed to plaintiff its satisfaction with the company's services prior to September 21, 2009.  (Id. at ¶ 40). BHC had never expressed an intent not to renew the contract between the parties or otherwise discontinue contractual and business relations with AFVC.  (Id.).  On September 21, 2009, BHC notified plaintiff that BHC would terminate the contract between the companies within sixty days due to BHC's dissatisfaction with plaintiff's services.  (Id. at ¶ 41).  Plaintiff alleges that this cancellation was a breach of contract.  (Id. at ¶ 42).  Plaintiff also contends that BHC cooperated with defendant to manufacture grounds to breach the contract between BHC and AFVC.  (Id. at ¶ 43).  Defendant allegedly agreed to pay BHC's attorney's fees and any judgment that arose from this matter, and purposefully interfered with the contractual

4

relationship between plaintiff and BHC with an intent to injure plaintiff.  (Id. at ¶¶ 43,

47).  Defendant was not a party to the agreement between BHC and plaintiff.  (Id. at

¶ 48).  Plaintiff alleges that BHC also signed a service contract with defendant during

the term of the AFVC/BHC contract.  (Id. at ¶ 44).  Plaintiff removed its machines

from BHC at BHC's request on December 21, 2010.  (Id. at ¶ 45).  Defendant has

since provided BHC with vending machine services.  (Id. at ¶ 46).

Plaintiff filed a complaint in this matter on December 20, 2010.  (Doc. 1).  After

being served with the complaint, defendant filed a motion to dismiss.  (Doc. 7).

Plaintiff responded to this motion by seeking leave of court to file an ameded

complaint.  (Doc. 11).  The court granted this motion on February 8, 2011 and

denied the motion to dismiss as moot.  (Docs. 13, 14).  Plaintiff filed its amended

complaint on February 14, 2011.  (Doc. 15).

The amended complaint contains three counts.  Count I is a claim for tortious

interference with existing contractual relationships.  Plaintiff alleges defendant

improperly interfered with its contracts with Novapak, Altadis and BHC.  Cout II is a

claim for tortious interference with prospective contractual relationships.  Plaintiff

alleges defendant interfered with contractual relationships AFVC reasonably

expected would continue after the expiration of the existing contracts.  Count III is a

claim for civil conspiracy.

After being served with the amended complaint, defendant filed the instant

motion to dismiss.  The parties then briefed the issues, bringing the case to its

present posture.

**Jurisdiction**

Plaintiff is a New York corporation with its principal place of business in that state.  Defendant is a New Jersey Corporation with its principle place of business in that state.  The amount in controversy exceeds $75,000.  As such, the court has jurisdiction pursuant to  28 U.S.C. § 1332.  The court is sitting in diversity, and therefore the substantive law of Pennsylvania shall apply.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Defendant seeks dismissal of the complaint pursuant to both Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b).  When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief."  Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)).  The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations

omitted).  The court does not have to accept legal conclusions or unwarranted

factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,

450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d

902, 906 (3d Cir. 1997)).

     The federal rules require only that plaintiff provide "'a short and plain

statement of the claim showing that the pleader is entitled to relief,'" a standard

which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a

showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the

speculative level.'"  McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  The

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

(quoting Twombly, 550 U.S. at 570).  Such "facial plausibility" exists "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the conduct alleged."  Id.

## Discussion

     Defendant urges dismissal of each of plaintiff's claims. The court will address

each in turn, as appropriate.

### i.  Count I

     Defendant argues that plaintiff's claim for interference with existing contractual

relations should be dismissed.  To prevail on a claim for interference with existing

contractual relations in Pennsylvania, a plaintiff must show "(1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct." Phillips v. Selig, 959 A.2d 420, 429 (Pa. Super. Ct. 2008).  Defendant disputes that plaintiff has stated a claim on the third element of this cause of action, an absence of privilege or justification on defendant's part for interfering with the contract.

The third element of such claims cites to an "'absence of privilege or justification on the part of the defendant,'" which is "'merely another way of stating that the defendant's conduct must be improper.'" Cloverleaf Dev., Inc. v. Horizon v. Horizon Financial F.A., 500 A.2d 163, 169 (Pa. Super. Ct. 1985) (quoting Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183-84 (Pa. 1978)). A plaintiff must provide "proof that the defendant's actions were improper under the circumstances presented, which is determined in accordance with the factors listed in [the] Restatement [(2d) of Torts] section 767." Id.  Under this standard, "[i]nterferences 'which are sanctioned by the rules of the game which society has adopted,'" are permissible.  Id.  (quoting Adler, 393 A.2d at 1184).  As such, a number of factors guide consideration of whether a defendant's conduct is improper: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be

advanced by the actor, (e) the proximity or remoteness of the actor's conduct to the interference and (f) the relations between the parties."  Adler, 393 A.2d at 1184.

The defendant argues that the complaint alleges defendant's conduct was designed to improve its business and gain a larger number of vending contracts. Such conduct is not improper, as defendant acted primarily in its own business interest.  Moreover, plaintiff had little expectation that it could enforce the contracts in this case, and plaintiff itself breached those contracts.  Since plaintiff had not provided proper service on the contracts and the third parties wished to terminate them, social interests were served by defendant's conduct.  The court agrees with the defendant that if plaintiff had alleged only efforts by the defendant to convince the third parties to sign contracts with Full Service, such conduct would represent normal business dealings and not tortious interference with a contract.  As explained above, however, plaintiff has here alleged that defendant did more than engage in normal business competition, but instead specifically induced the third parties to breach the contracts by offering to pay their legal fees if they did so.  The plaintiff also alleges that defendant took this action solely to harm the plaintiff.  Financing a third-party's efforts to break a contract is not conduct sanctioned by the rules of the game as normally played under these circumstances.  If plaintiff can prove these facts, AVCD would be entitled to relief, and the court will deny the motion on this point.

**ii.  Count II**

9

Defendant alleges the Count II should be dismissed.  Count II seeks recovery for tortious interference with prospective contractual relations between plaintiff and BHC.  To state a claim for that tort, a plaintiff must allege "(1) the existence of a . . . prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to . . . prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct."  Strickland v. University of Scranton, 700 A.2d 979, 985 (Pa. Super. Ct. 1997).  Defendant argues that plaintiff has not alleged the existence of a prospective contractual relationship.  Plaintiff alleges only that a current contractual relationship existed and that the parties were satisfied with those contracts and that plaintiff expected the contracts to be renewed.  Moreover, defendant argues that plaintiff has not alleged that defendant's alleged conduct was without privilege or justification.

Courts have concluded that "[d]efining a 'prospective contractual relationship' can be difficult."  Phillips, 959 A.2d at 428.  "'[T]he term has an evasive quality, eluding precise definition.  It is something less than a contractual right, something more than a mere hope.'"  Id. (quoting Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979)).  Still, a plaintiff must demonstrate a "'reasonable likelihood or probability'" of the parties agreeing to a contract.  Id. (quoting Glenn v. Point Park College, 272 A.2d 895, 898-99 (Pa. 1971)).  Courts "apply an objective

10

standard" for determining whether a reasonable likelihood or possibility exists.  Id. (quoting Thompson Coal, 412 A.2d at 471).  In addition, "a plaintiff must base its claim that there was a contractual relationship on something other than an existing or current relationship." Acumed LLC v. Advanced Surgical Servs., 561 F.3d 199, 213 (3d Cir. 2009).

The subject of this claim is plaintiff's supposed prospective contract with BHC. Plaintiff alleges that BHC had frequently informed plaintiff that service provided under the contract was satisfactory and BHC represented it was "extremely pleased" with AFVC's services.  (Amend. Complt. at ¶ 40).  BHC never indicated to plaintiff that it did not intend to renew the contract.  (Id.).  The court concludes that at this stage of the proceedings plaintiff's claim can survive defendant's motion.  The court reads these allegations to be that the parties had negotiated terms for renewal of the contract based on the satisfactory performance of the current contract.  While the court agrees with the defendant that the mere "hope" of a renewal would not be an allegation sufficient to survive a motion to dismiss, the court concludes that the allegation is based on more than the current existence of a contract or plaintiff's hope that the parties could negotiate an agreement.  If plaintiff can prove that the parties had an informal agreement to renew the contract on satisfactory performance and not just a hope that the parties would do so, plaintiff could prevail on this claim. This arrangement would be "something less than a contractual right, something more than a mere hope."  Thompson Coal, 412 A.2d at 472.

11

Defendant also contends that plaintiff has not alleged that its contact was without privilege or justification.  In this context, "Pennsylvania has adopted section 768 of the Restatement (Second) of Torts, which recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with others' prospective contractual relationships."  <u>Acumed</u>, 561 F.3d at 215.  This privilege exists "because if more than one party seeks to sell similar products to prospective purchasers, both necessarily are interfering with the other's attempt to do the same thing."  <u>Id.</u>  Thus, a party is not liable for interference with a prospective contractual relationship "'if: (a) the relation concerns a matter involved in the competition between the actor and the other; (b) the actor does not employ wrongful means; (c) his action does not create or continue an unlawful restraint of trade; and (d) his purpose is at least in part to advance his interest in competing with the other.'"  <u>Id.</u> (quoting Rest. (2d) of Torts § 768).  In this context, the Court of Appeals has predicted that the Pennsylvania Supreme Court would find that wrongful conduct is conduct that by itself is "capable of forming the basis of liability for the defendant."  <u>CGB Occupational Therapy v. RHA Health Servs.</u>, 357 F.3d 375, 388 (3d Cir. 2004) (quoting <u>Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.</u>, 140 F.3d 494, 531 (3d Cir. 1998)).  Defendant insists that plaintiff has not alleged such a basis for liability.

Plaintiff does not dispute that this standard should apply.  As evidence of wrongful conduct, it alleges "commercial disparagement, fraud, inducing breach of contract, causing and/or otherwise inducing civil suits, and/or other independently

12

actionable conduct and/or predatory means." (Plaintiff's Brief (Doc. 18) at 18). The court agrees with the plaintiff that at this point in the litigation dismissal would be inappropriate. Plaintiff has alleged acts that provide an independent basis for liability for the defendant, including misuse of process, disparagement, and fraud. According to plaintiff's complaint, Full Service conspired with BHC to breach plaintiff's contract, participated in a scheme to misstate the success of plaintiff's services to BHC and offered to pay any legal fees connected to a breach of contract. Assuming plaintiff could prove such claims, this conduct could be wrongful. The court will therefore deny the motion to dismiss on this point as well.

### iii.  Count III

Defendant argues that plaintiff's claim for civil conspiracy should be dismissed. In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).

Defendant argues that the court should not accept the allegations in the amended pleading, but should instead look to the original pleading. In that pleading, plaintiff averred that the defendant acted to improve its own financial position, and not solely to harm plaintiff. As such, defendant insists, plaintiffs have not stated a claim for conspiracy. Defendant cites to a Pennsylvania case for this proposition,

13

but does not explain why the court should apply Pennsylvania law to the rules of pleading in federal court.[1]  Under federal law, "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994); see also Washer v. Bullitt County, 110 U.S. 558, 562 (U.S. 1884) (Finding that district court had diversity jurisdiction because, though original complaint did not specify a sufficient amount in controversy, the amended complaint did, and "[w]hen a petition is amended by leave of the court the cause proceeds on the amended petition."); New Rock Asset Partners, L.P. v. Preferred Entity Advancements, 101 F.3d 1492, 1503 (3d Cir. 1996) (finding that the district court no longer had jurisdiction when an amended complaint

---

[1]In any case, Pennsylvania courts have similarly held that "the filing of an amended complaint constitutes 'virtually a withdrawal of the first[.]'" Brooks v. B & R Touring Co., 939 A.2d 398, 402 (Pa. Super. Ct. 2007).  In the auto-accident case cited by defendants for the proposition that the court should consider the averments made in the original complaint in deciding the motion to dismiss, the plaintiffs had originally admitted that their decedent had ridden as passenger in an automobile with defendant, who had appeared extremely intoxicated when the decedent entered the car.  Hachick v. Kobelak, 393 A.2d 692, 693 (Pa. Super. Ct. 1978).  Defendant raised a contributory negligence defense.  Id.  The court then allowed the plaintiff to file an amended complaint that eliminated any reference to alcohol consumption.  Id.  At trial, the defendant sought to introduce evidence of the averments about drunkenness in the original complaint.  Id.  The trial court refused to admit the evidence.  Id.  The Superior Court reversed and remanded for a new trial, finding that the averments in the original complaint regarding alcohol consumption and drunkenness were "factual averments [that] concern the decedent's possible contributory negligence, [and] were thus admission against appellee's interest."  Id. at 695.  As such, the trial court had erred by not permitting defendant "to present these facts at trial."  Id.  Here, the court is not considering the admissibility of evidence at trial, nor is the court deciding a motion for summary judgment.  Instead, the court is evaluating defendant's motion to dismiss.  The purpose of such a motion is to evaluate the sufficiency of the allegations in the complaint.  The court will confine itself to the allegations of the complaint.  To do otherwise would be to frustrate the purpose of allowing amendment of a complaint.

did not include the party that gave the court jurisdiction); <u>Kelley v. Crosfield</u>

<u>Catalysts</u>, 135 F.3d 1202, 1204 (7th Cir. 1998) (reversing district court's dismissal of

amended complaint because dismissal relied on allegations in an earlier complaint

and "[i]t is well-established that an amended pleading supersedes the original

pleading; facts not incorporated into the amended pleading are considered functus

officio.") .  Thus, the court will evaluate the motion based on the allegations in the

amended complaint, as that document has superseded the original complaint.

The allegations in the amended complaint are sufficient to state a claim for

civil conspiracy.  Plaintiff alleges that Full Service conspired with Novapak, Altadis

and BHC to interfere with AFVC's existing and prospective contractual relationships.

(Amend. Complt. at ¶ 68).  Plaintiff also alleges that defendant performed overt acts

in furtherance of the conspiracy, including offering to pay the cost of breaching the

contract.  Finally, plaintiff alleges injury from defendant's conduct in the loss of

vending business with the Novapak, Altadis and BHC.  As such, plaintiff has stated a

claim for civil conspiracy.

### iv.  Punitive Damages

Defendant also argues that plaintiff's claim for punitive damages should be

dismissed.  In Pennsylvania, "[a]ssesment of punitive damages is proper when a

party's actions are of such an outrageous nature as to demonstrate intentional,

willful, wanton or reckless conduct."  <u>Ruffing v. 84 Lumber</u>, 600 A.2d 545, 551 (Pa.

Super. Ct. 1991).  A jury may award punitive damages "for conduct that is

outrageous either because of the defendant's evil motive or because of his reckless indifference to the rights of others." Id. Defendant argues that it acted out of business interest as plaintiff's competitor, and not with any evil motive or outrageous conduct. Punitive damages, defendant contends, are thus inappropriate on this claim.

The court disagrees with defendant and agrees with the plaintiff that the conduct alleged in the complaint, if proved to a jury, could constitute outrageous conduct characterized by an evil motive. Plaintiff alleges that not only did defendant attempt to convince the third parties to renegotiate their vending contracts with plaintiffs, but offered to pay the legal costs and penalties associated with terminating such contracts in breach of the agreements. Such behavior does not constitute normal, if bare-knuckled, business competition, but instead a willful attempt to disrupt and destroy a contract that already exists. If plaintiff can prove such outrageousness occurred, punitive damages would be appropriate. The court will deny the motion on these grounds.

**Conclusion**

For the reasons stated above, the court will deny the defendant's motion to dismiss. An appropriate order follows.

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN FOOD AND VENDING CORPORATION,** | : | **No. 3:10cv2576** |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FULL SERVICE VENDING COMPANY,** | : | |
| **d/b/a FULL SERVICE FOODS GROUP,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

    **AND NOW**, to wit, this 5th day of July 2011, defendant's motion to dismiss (Doc. 16) is hereby **DENIED**.

.

                                       **BY THE COURT:**

                                       **s/ James M. Munley**
                                       **JUDGE JAMES M. MUNLEY**
                                       **UNITED STATES DISTRICT COURT**